1
2
3
4            UNITED STATES DISTRICT COURT
5               EASTERN DISTRICT OF CALIFORNIA
6

7   BHARATKUMAR PATEL,                )   1:06-cv-00882-AWI-TAG HC
                                      )
8               Petitioner,           )   REPORT AND RECOMMENDATION
                                      )   REGARDING PETITION FOR WRIT
9       v.                            )   OF HABEAS CORPUS (Doc. 1)
                                      )
10  JEFF WRIGLEY, Warden, et al.,     )
                                      )
11              Respondents.          )
    _____ )
12

13          Petitioner is a federal prisoner proceeding with a petition for writ of habeas corpus  pursuant

14  to 28 U.S.C. § 2241.

15                    **FACTUAL AND PROCEDURAL HISTORY**

16          On September 27, 2004, Petitioner pleaded guilty to a violation of 8 U.S.C.

17  § 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(I) and (II), and 1324(a)(1)(B)(I) (conspiracy to harbor illegal

18  aliens), and was sentenced by the United States District Court for the District of Arizona to seventy-

19  one months incarceration.   (Doc. 6, Exs. 1).

20          The instant petition was filed on July 11, 2006.  (Doc. 1).  On August 7, 2006, Petitioner filed

21  a motion for a scheduling order and for expedited review, claiming that the nature of his allegations

22  required immediate action by the Court.  (Doc. 3).  On August 28, 2006, the Court granted

23  Petitioner's motion for expedited review and required Respondent to file a response within fifteen

24  days of the service of the Court's order.  (Doc. 4).  On September 12, 2006, Respondent filed his

25  response.  (Doc. 6).

26                              **JURISDICTION**

27          Writ of habeas corpus relief extends to a person in custody under the authority of the United

28  States.  See 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or

1  constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. §

2  2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must

3  bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  See e.g., Capaldi v. Pontesso,

4  135 F.3d 1122, 1123 (6th Cir. 1998); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir.

5  1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991); Brown v. United States, 610

6  F.2d 672, 677 (9th Cir. 1980).  To receive relief under 28 U.S.C. § 2241 a petitioner in federal

7  custody must show that his sentence is being executed in an illegal, but not necessarily

8  unconstitutional, manner.  See e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1996)

9  (contending time spent in state custody should be credited toward federal custody);  Jalili, 925 F.2d

10  at 893-94 (asserting petitioner should be housed at a community treatment center);  Barden v.

11  Keohane, 921 F.2d 476, 479 (3rd Cir. 1990) (arguing Bureau of Prisons erred in determining whether

12  petitioner could receive credit for time spent in state custody);  Brown, 610 F.2d at 677 (challenging

13  content of inaccurate pre-sentence report used to deny parol).  A petitioner filing a petition for writ of

14  habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's

15  custodian.  Brown, 610 F.2d at 677.

16      In this case, Petitioner alleges that the Bureau of Prisons' ("BOP's") policy limiting placement

17  in a community corrections center ("CCC")[1] to ten percent of his sentence violates federal law.

18  Petitioner is challenging the legality of the manner in which his sentence is being executed.  Thus,

19  his petition is proper under 28 U.S.C. § 2241.  In addition, because Petitioner is incarcerated at the

20  Taft Correctional Institution, Taft, California, which is within the Eastern District of California,

21  Fresno Division, this Court has jurisdiction to proceed to the merits of the petition.

22                                              **EXHAUSTION**

23      A preliminary question is whether petitioner has exhausted available administrative remedies.

24  Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of

25  imprisonment must first exhaust all administrative remedies. Western Radio Services Co. v. Espay,

26  _____

27      [1]Although Respondent points out that these centers are now called "residential re-entry centers,"
and refers to them in the Answer as "RRC's," (Doc. 6, p. 3), for the sake of clarity and uniformity with

28  prior decisions, the Court will refer to them in this Report and Recommendation as "CCC's."

1  79 F.3d 896, 899 (9th Cir. 1996); <u>Martinez v. Roberts</u>, 804 F.2d 570, 571 (9th Cir. 1986); <u>Chua Han</u>

2  <u>Mow v. United States</u>, 730 F.2d 1308, 1313 (9th Cir. 1984); <u>Ruviwat v. Smith</u>, 701 F.2d 844, 845

3  (9th Cir. 1983).

4       The exhaustion prerequisite for filing a § 2241 petition is judicially created; it is not a

5  statutory requirement. <u>Brown v. Rison</u>, 895 F.2d 553, 535 (9th Cir. 1990), <u>overruled on other</u>

6  <u>grounds</u>, <u>Reno v. Koray</u>, 515 U.S. 50, 54-55 (1995). Thus, "[b]ecause exhaustion is not required by

7  statute, it is not jurisdictional." <u>Brown</u>, 895 F.2d at 525. If a Petitioner has not properly exhausted

8  his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the

9  merits, or require the petitioner to exhaust his administrative remedies before proceeding in court."

10  <u>Id.</u>; <u>see</u> <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144-46 (1992), <u>superceded on other grounds</u>,

11  42 U.S.C. § 1997(e).

12       One of the purposes of administrative exhaustion is to allow the agency an opportunity to

13  remedy its own mistakes before being haled into court, and this applies with particular force when

14  the challenged action involves an exercise of the agency's discretionary power. <u>McCarthy v.</u>

15  <u>Madigan</u>, 503 U.S. at 144-46. Thus, exhaustion of administrative remedies would be futile and

16  should be excused if the agency lacks authority to grant the requested relief or has predetermined the

17  issued before it. <u>See id.</u> at 148.

18       Here, Respondent contends that Petitioner has not sought administrative relief of any kind

19  within the BOP, let alone fully exhausted his claims. (Doc. 6, p. 7; Exs. 5, p. 2). As mentioned,

20  however, futility is an exception to the exhaustion requirement. <u>Laing v. Ashcroft</u>, 370 F.3d 994,

21  1000-1001 (9th Cir. 2004). In the instant action, it is apparent that it would be futile for Petitioner to

22  exhaust his administrative remedies because he alleges he is being denied a CCC placement prior to

23  the last ten percent of his prison sentence based on formally-adopted BOP regulations, the validity of

24  which BOP strenuously maintains. In the Court's view, therefore, Petitioner's exhaustion of his

25  administrative remedies is not a prerequisite to the district court's jurisdiction over the case because

26  of the BOP's intractable and immutable policy against the relief sought.

27  ///

28  ///

**DISCUSSION**

Petitioner challenges the federal regulations governing the BOP's policy of limiting CCC placement to the last six months, or last ten percent, of the inmate's sentence, whichever is less,1 and seeks an assessment of his eligibility for CCC placement made without regard to the purportedly invalid regulations.  (Doc. 1, p. 3).

A.  The Statutory And Regulatory Framework Governing CCC Placement.

The BOP regulations at issue are based on two statutes.  Title 18, § 3621(b), of the United States Code grants the BOP discretion to designate a prisoner's place of incarceration in "any available penal or correctional facility that meets minimum standards of health and habitability[.]" In addition, at any time the BOP may "direct the transfer of an inmate from one penal or correctional facility to another.  Id.  In making the initial placement designation and any transfer decisions, the BOP must consider these five factors:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence–
> > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.

Id.

The second relevant statute is 18 U.S.C. § 3624( c), which directs the BOP to prepare prisoners for re-entry into the community near the end of their sentences.  This statute provides in relevant part as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under the conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624( c).

On March 25, 1992, the Department of Justice's Office of Legal Counsel ("OLC") issued an opinion that interpreted § 3621(b) to allow the BOP unlimited authority to place prisoners in any

appropriate facility for incarceration, including those operated by the private sector.  16 Op. Off. Legal Counsel 65, 67 (1992).  Thus, it became a common practice for the BOP to place a low-risk, nonviolent offender in a CCC, a halfway house, or some other form of "community confinement," instead of committing the offender to a federal prison, pursuant to the grant of authority in § 3624(c). Community Confinement, 70 Fed.Reg. 1659, 1659 (Jan. 10, 2005)(codified at Title 28 C.F.R. § 570); BOP Practice of Placing in CCC Certain Offenders Who Have Received Sentences of Imprisonment ("OLC Opinion"), 2002 WL 31940146 (Dec. 13, 2002).  This practice of CCC placement was considered routine, and was not seriously contested by any party.  United States v. Serpa, 251 F.Supp.2d 988, 990 (D.Mass.2003)("These practices were entirely routine and were all but taken for granted by all participants: the BOP, the Probation Office, the U.S. Attorney's Office, the defense bar, and the judiciary.").

On December 13, 2002, however, the OLC changed its interpretation of § 3621(b). Op. Off. Legal Counsel, slip. op., 2002 WL 31940146 (December 13, 2002).  The OLC determined first that § 5C1.1 of the United States Sentencing Guidelines did not permit the BOP to substitute confinement in a CCC for a minimum term of imprisonment imposed under that guideline.  The OLC also concluded that § 3621(b) does not give the BOP general authority to place an offender in community confinement from the outset of his sentence or to transfer the offender from prison to community confinement at any time the BOP chooses during the course of the offender's sentence.

Instead, under the new interpretation of § 3621(b), front-end placements are not authorized and back-end offenders are only eligible for confinement in CCC's for the lesser of (I) ten percent of their sentence, or (ii) the six-months period specifically authorized by 18 U.S.C. § 3624(c).  The OLC reasoned that, while § 3621(b) gave the BOP the discretion to choose an inmate's place of imprisonment generally, a CCC did not constitute a place of imprisonment for purposes of that section.  Op. Off. Legal Counsel, 2002 WL 31940146 (December 13, 2002).  The OLC determined that the authority to transfer a prisoner to a CCC came solely from § 3624(c), which limits the time a prisoner may spend in a CCC to "a reasonable part, not to exceed six months, of the last 10 per centum of the term."  Id.

///

Shortly after the 2002 OLC opinion was issued, the United States Attorney General adopted the OLC's position and instructed the BOP to transfer all offenders residing in CCC's with more than 150 days remaining on their sentence to a traditional prison facility because the use of CCCs was "unlawful." Memorandum of Deputy Attorney General Larry D. Thompson, December 16, 2002, at 1 ("Thompson Memorandum").[2]  The Thompson Memorandum recounted the conclusions contained in the OLC memorandum, id. at 1-2, and concluded by explaining that a concern regarding the BOP's previous CCC placement policy was its "potentially disproportionate, and inappropriately favorable, impact on so-called 'white-collar' criminals." Id. at 2-3.

On December 20, 2002, the Director of the BOP issued a memorandum to all federal judges stating that the BOP would not "use CCC's as a substitute for imprisonment," and thus the BOP would no longer honor judicial recommendations to place inmates in CCC's for the imprisonment portions of their sentences.  Memorandum of BOP Director Kathleen Hawk Sawyer, December 20, 2002, at 1.  The memorandum explained briefly:

> This procedure change follows recent guidance from the U.S. Department of Justice's Office of Legal Counsel (OLC), finding that the term "community confinement" is not synonymous with "imprisonment."  OLC has determined that the Bureau's practice of using CCCs as a substitute for imprisonment contravenes well-established case law, and is inconsistent with [Section 5C1.1 of the United States Sentencing Guidelines].

Id.; Dimas Charities, Inc. v. United States Dept. of Justice, 401 F.3d 666, 670-71 (6th Cir. 2005).

The First and Eighth Circuits found this 2002 policy unlawful because it did not recognize the BOP's discretion to transfer an inmate to a CCC at any time, and therefore contrary to the plain meaning of § 3621.  Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17

---

[2]The operative language of the Thompson memorandum is as follows:

"OLC has now issued a formal opinion finding that BOP's policy is unlawful.  Accordingly, BOP immediately should take all steps necessary to ensure that its sentencing placement decisions are in full compliance with the governing law.  In addition, BOP should transfer to an actual prison facility all federal offenders currently residing in a CCC who, as of today, have more than 150 days remaining on the imprisonment component of their sentence.  BOP shall give at least 30 days written notice to each such offender prior to the transfer."

Thompson Memorandum at 1.

(1st Cir. 2004).  Both circuits held that the time constraints of § 3624(c) limited *only* the *affirmative obligation* of the BOP, *not* the agency's *discretion* to place a prisoner in a CCC for a longer period of time. Elwood, 386 F.3d at 846-847; Goldings, 383 F.3d at 23.

On August 18, 2004, in response to decisions such as Elwood and Goldings, the BOP proposed new regulations "announcing its categorical exercise of discretion for designating inmates to community confinement when serving terms of imprisonment." 69 Fed.Reg. 51, 213 (Aug. 18, 2004).  While acknowledging the BOP's general discretion to place an inmate at a CCC at any time, the 2005 regulations once again limit CCC placement to the lesser of ten percent of a prisoner's total sentence or six months, unless special statutory circumstances apply.  Id.  The final rules were published on January 10, 2005, and became effective on February 14, 2005 ("the 2005 regulations").

The final CCC designation regulations read:

**§ 570.20 What is the purpose of this subpart?**
(a) This subpart provides the Bureau of Prisons' (Bureau) *categorical exercise of discretion for designating inmates to community confinement.*
The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

**§ 570.21 When will the Bureau designate inmates to community confinement?**
(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, *during the last ten percent of the prison sentence being served, not to exceed six months.*
(b) We may exceed these time-frames *only* when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046( c).

See Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 240-41 (3rd Cir. 2005).

B.  Analysis of Petitioner's Claim.

Petitioner alleges in his petition that his projected release date is May 2, 2007.  (Doc. 1, p. 2). Petitioner also alleges that he has received only seventy-one days of CCC placement, although he contends that § 3621(b) gives the BOP discretion to award Petitioner up to six months of CCC placement.  (Id.).  Petitioner argues that the BOP's refusal to conduct an assessment to award more

than seventy-one days of CCC placement is contrary to the intent of Congress.  (<u>Id.</u>).  Petitioner

further contends that the BOP's policy for CCC placement, as expressed in the BOP's 2005

regulations, conflicts with applicable federal statutes and "strips BOP of any discretion."   (<u>Id.</u>).

Respondent counters first by correctly noting that this Court has previously addressed this

precise issue contrary to Respondent's position.  (Doc. 6, p. 17).  In <u>Horn v. Ellis</u>, 1:06-cv-00006-

OWW-TAG, the Court determined that BOP's policy was contrary to the intent of Congress and

granted the petitioner habeas relief by requiring BOP to conduct a review of potential CCC

placement for Horn without reference to the BOP's own regulations.

In his Opposition to the instant petition, Respondent contends that the Court erred in <u>Horn</u> in

three respects. First, Respondent contends that the Court's decision "fails to appreciate the effect that

the mandatory restrictions of § 3624(c) have on § 3621(b)." (Doc. 6, p. 17).   Second, Respondent

contends that, in distinguishing <u>Lopez v. Davis</u>, 531 U.S. 230 (2001), the Court in <u>Horn</u> "fails to

appreciate the high degree of categorical discretion the BOP exercised when it listed factors to

essentially redefine what was considered a non-violent offense that would preclude early eligibility."

(Doc. 6, p. 17).  Finally, Respondent maintains that the BOP's regulations are not contrary to the

Congressional intent, but rather that the "Congress deliberately left the statute open for the agency to

make a "permissible reading" of it," and, therefore, under <u>Chevron, U.S.A., Inc. v. Natural Res. Def.</u>

<u>Council, Inc.</u>, 467 U.S. 837 (1984), the Court should "defer to the agency's reasonable interpretation

of the statute and uphold 28 C.F.R. § 570.20-21 as a reasonable exercise of agency discretion that is

consistent with § 3621(b)." (Doc. 6, pp. 17-18).  In the course of the Court's analysis below, each of

these concerns will be addressed.

1. <u>Construction of § 3621(b) with § 3624(c)</u>.

Respondent contends that the BOP's exercise of discretion in rule-making is justified because

the BOP's interpretation of § 3624(c) and § 3621(b), as expressed in the BOP regulations, is the

most reasonable interpretation.  (Doc. 6, p. 10).  Respondent argues that "the two sections address

two different concerns and need to be considered separately." (<u>Id.</u> at 15).  While § 3621 "lists the

factors that determine where the BOP should place or transfer an inmate," § 3624(c) only comes into

play "when something triggers a placement decision and a suitable facility must be found."  (<u>Id.</u>).

Respondent's argument, however, has been rejected by the three federal circuits who have addressed the issue.  E.g., <u>Woodall</u>, 432 F.3d at 250; <u>Levine v. Apker</u>, 455 F.3d 71 (2d Cir. 206); <u>Fults v. Sanders</u>, 442 F.3d 1088 (8th Cir. 2006).  In <u>Woodall</u>, the Court dismissed Respondent's interpretation as follows:

> [Section] 3624 does not determine when the BOP should consider CCC placement, but when it must provide it.  The clear language of [Section] 3624(c) mandates that the BOP "shall" assure that a prisoner is given appropriate pre-release conditions that are focused on re-entry, if "practicable."  <u>The statute requires the BOP not just to consider, but to actually place an inmate in a CCC or like facility, during the last ten percent or six months of the sentence, when that is possible.</u>

<u>Woodall</u>, 432 F.3d at 250 (emphasis supplied).

At no point in the 2005 regulations, however, does the BOP take into account the requirement that it consider the particular circumstances of individual inmates.  By definition, particular circumstances cannot be taken into consideration by the promulgation and implementation of a blanket rule.  Notably, here, Congress expressed its intent that the BOP take into account, inter alia, the sentencing judge's recommendation, the nature of the offense, and the "history and characteristics" of the prisoner.  By their very natures, these criteria require an individualized determination for each prisoner that the 2005 regulations categorically do not allow.  As the <u>Woodall</u> Court observed, "It is simply not possible to consider individualized circumstances in the drafting room before a prisoner even enters the criminal justice system."  <u>Woodall</u>, 431 F.3d at 248.[3]

Contrary to the 2005 regulations, the statutes, when read together, place no time limit on when the BOP may consider a pre-release change of confinement.  Indeed, the BOP has "an affirmative obligation" and *must* consider such a change in placement status.  <u>See Elwood</u>, 386 F.3d at 846-847; <u>Goldings</u>, 383 F.3d at 23.  The BOP is not free simply to re-write Congress's prescription of the factors to be considered in making that determination.  While § 3624(c) limits the BOP's discretion not to consider community confinement or other pre-release alternatives *at the end* of a prisoner's term, it does *not* prohibit the BOP from doing so earlier, pursuant to a different grant

---

[3]Far from contesting that the BOP's regulations are "categorical" rather than individualized, Respondent concedes as much, stating that "[the regulations] limit the class of prisoners who are eligible for RRC placement based on the amount of time they have left to serve and not on other factors individual to a particular prisoner."  (Doc. 6, p. 10).

1   of discretionary authority.  <u>Goldings</u>, 383 F.3d at 24.  Thus, the regulations violate Congressional

2   intent by substituting an arbitrary, across-the-board application of a ten-percent maximum for pre-

3   release alternative confinement in lieu of considering the Congressionally mandated criteria in

4   § 3621 that must be the focal point of any change of confinement assessment.

5          Respondent also argues that the three circuits that have rejected the 2005 regulations used a

6   flawed analysis that permits "a discretionary provision to override a mandatory duty," a process that

7   "runs contrary to the common sense of these provisions."  (Doc. 6, p. 15).  However, § 3621(b) is

8   "discretionary" *only* in the sense that it provides "that the BOP *may* place a prisoner where it wishes

9   *so long as* it consider the factors enumerated in § 3621."  <u>Woodall</u>, 432 F.3d 2345.  The factors

10  themselves are *not* optional or discretionary.  <u>Id.</u>  Since it is these mandatory factors themselves that

11  are *not* given full force and effect under the BOP's 2005 regulations, Respondent's characterization

12  that a "discretionary" provision is being allowed to "override" a "mandatory duty," is misleading and

13  inaccurate.   As the <u>Woodall</u> Court noted, the legislative history of § 3621(b) clearly indicates "that

14  the BOP is 'specifically required' to consider the § 3621(b) factors...before it can properly place or

15  transfer an inmate."  <u>Woodall</u>, 432 F.3d at 245.

16                 2. <u>Categorical Exercise of Discretion under Lopez v. Davis.</u>

17         Respondent next contends that the BOP's regulation is a categorical exercise of

18  administrative discretion similar to that upheld by the United States Supreme Court in <u>Lopez</u>, 531

19  U.S. at 243-44.  (Doc. 6, pp. 12-13).  <u>Lopez</u>, however, is distinguishable from the instant case.

20         In <u>Lope</u>*z,* the Supreme Court addressed the BOP's categorical exercise of discretion under a

21  different subsection of 18 U.S.C. § 3621, i.e., subsection (e)(2)(b), which provides that an inmate

22  convicted of a non-violent offense could have his or her period of incarceration reduced after

23  successfully completing a drug treatment program.  The BOP had issued a regulation excluding

24  inmates from early release under this provision if they were convicted of non-violent crimes

25  involving firearms.  28 C.F.R. § 550.58(a)(1)(vi)(B).  The Supreme Court upheld the regulation,

26  stating that nothing in the statute at issue prohibited "categorical exclusions."  <u>Lopez</u>, 531 U.S. at

27  243.

28  ///

1     *Lopez* is distinguishable from this case because subsection (e)(2)(b) did not contain the

2   specific criteria listed in § 3621(b), which create the conflict with the BOP's 2005 regulations.  As

3   the *Lopez* Court noted, "constraints . . . requiring the BOP to make individualized determinations

4   based only on post-conviction conduct are nowhere to be found in [Section] 3621(e)(2)(b)."  Id. at

5   241-42.  Indeed, subsection (e)(2)(b) offers no specific criteria to be considered other than the

6   overarching criterion that only nonviolent offenders are eligible for early release.  Accordingly, the

7   BOP can make categorical decisions within that class of offenders without violating that subsection.

8     Subsection 3621(b), however, is different from § 3621(e)(2)(b), because, as explained *supra*,

9   it does indeed prescribe criteria that the BOP *must* consider in making its placement determinations:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence -
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

15   18 U.S.C. § 3621(b).

16     The second, third, and fourth factors - i.e., the nature and circumstances of the offense, the

17   history and characteristics of the prisoner, and any statement by the court that imposed the sentence -

18   cannot be fully considered without evaluating inmates on a case-by-case basis.

19     In invalidating the 2005 regulations, the *Woodall* court explained as follows:

> The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence.  And yet, according to the text and history of Section 3621, these factors must be taken into account.  The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in Section 3621(b) for making placement and transfer determinations.

25   *Woodall*, 432 F.3d at 244; see *Fults v. Sanders*, 442 F.3d 1088, 1091 (8th Cir. 2006).

26      Accordingly, and contrary to Respondent's contentions,  *Lopez* does not control the

27   disposition of this action.  *Fults*, 442 F.3d at 1091; *Woodall*, 432 F.3d at 247; *Levine*, 455 F.3d at 85.

28   ///

3. Administrative Agency Deference.

Respondent also argues that, as the BOP is the agency responsible for administering 18 U.S.C. § 3621, the BOP's interpretation of that statute is entitled to substantial deference as the most reasonable interpretation of the statute. (Doc. 6, p. 8).

When faced with a challenge to an administrative agency's construction of a statute, which is implemented by that agency, a court must determine: (1) whether the language of the statute is ambiguous; and, if so, (2) whether the agency's interpretation of the statute is reasonable. See Chevron, 467 U.S. at 842-45. "[W]here Congress has enacted a law that does not answer the precise question at issue, all [a court] must decide is whether the [agency] has filled the statutory gap in a way that is reasonable in light of the legislature's revealed design." Lopez, 531 U.S. at 242. However, an agency is not entitled to *any* deference if Congress has unequivocally expressed its intent in the statute. See Food and Drug Administration v. Brown & Williamson Tobacco Co., 529 U.S. 120, 125-26 (2000), citing Chevron, 467 U.S. at 842-43.

Here, Respondent's argument for Chevron deference fails because the Congressional intent is clear. Congress's intent in promulgating § 3621 was to assure that pre-release conditions of confinement be used to facilitate a prisoner's re-entry to the community. This purpose is not ambiguous. Woodall, 432 F.3d at 248. The intent of Congress is also clear as to the mandatory consideration by the BOP of factors for grounds for placement. "Even for an agency able to claim all the authority possible under Chevron, deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." Gen. Dynamics Land Sys. v. Cline, 540 U.S. 581, 600 (2004). Section 3621(b) provides unequivocally that the BOP *must* consider several factors in CCC placement to effectuate the transition. 18 U.S.C. § 3621(b). In contrast, however, the BOP regulation provides that the BOP may *not* consider those factors in full. 28 C.F.R. § 570.20-21. The conflict between the regulations and the statute is unavoidable and irreconcilable. See Woodall, 432 F.3d at 248-49.

However, even assuming, arguendo, that the statute is ambiguous, the regulation fails the second prong of the Chevron standard because it is not "based on a permissible construction of the statute." Chevron, 467 U.S. at 843. As discussed, the regulations at issue here "fail to take into

account Congress's indications that certain individualized factors should be considered in the BOP's placement and transfer scheme." <u>Woodall</u>, 432 F.3d at 249.   Put in the language of the <u>Chevron</u> test, the BOP's 2005 regulations do not fill a statutory gap in § 3621(b); rather, they ignore the plain language of § 3621(b).  Congress specifically listed the five factors in § 3621(b) that the BOP must consider in making placement decisions.  As noted above, three of the five factors specified in that section are not generally applicable and, thus, require individual determinations that could not have been considered by the BOP in promulgating the 2005 regulations.  <u>See</u> <u>Fults</u>, 442 F.3d at 1092; <u>Woodall</u>, 432 F.3d at 248.  The BOP may not adopt regulations that selectively edit the very statutes the regulations purport to interpret.  <u>See</u> <u>Levine</u>, 455 F.3d at 85.

> "Categorical rule-making, like all forms of agency regulation, must be consistent with unambiguous Congressional instructions.  And, an agency may not promulgate categorical rules that do not take account of the categories that are made significant by Congress.  Though Congress left the BOP a large territory of discretion in implementing § 3621(b), it did not leave the BOP's duties undefined.  The BOP is not empowered to implement selectively the instructions given by § 3621(b), by picking and choosing those factors that it deems most compelling."

<u>Id.</u> (internal citation omitted).

In light of the foregoing, the Court concludes that the BOP's 2005 regulations illegally preclude the BOP from considering CCC placement at some point earlier than the last ten percent of the inmate's sentence and also preclude BOP consideration of the statutorily mandated factors in making such a placement, thus directly contravening the intent of Congress.   For those reasons, the Court recommends that the petition for writ of habeas corpus be granted.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus (Doc. 1), be GRANTED.

This Report and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twelve (12) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

Judge's Report and Recommendation."  Replies to the objections shall be served and filed within five (5) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 21, 2006**                                    **/s/ Theresa A. Goldner**
**j6eb3d**                                                UNITED STATES MAGISTRATE JUDGE